No. 97,546

In the Matter of the Adoption of G.L.V. and M.J.V.,
Children under the Age of 18 years.
(190 P.3d 245)

Opinion filed August 22, 2008.

*John W. Fresh*, of Larry R. Mears, Chartered, of Atchison, argued the cause and was on the briefs for appellant stepfather.
  No appearance by appellee natural father.

The opinion of the court was delivered by

DAVIS, J.: This case involves an appeal from the denial of a stepparent adoption. The Court of Appeals affirmed the district court's decision, holding that the natural father's consent was necessary since he had performed his parental duties during the 2 years preceding the adoption petition. *In re Adoption of G.L.V.*, 38 Kan. App. 2d 144, 163 P.3d 334 (2007). We granted the stepfather's petition for review to examine the district court's and the Court of Appeals' interpretation and application of the recently amended stepparent adoption statute, K.S.A. 2007 Supp. 59-2136(d), which now authorizes a court to consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. See L. 2006, ch. 22, sec. 1.

Facts

G.L.V. and M.J.V. are twin brothers, born on October 17, 1994. Their parents were never married and lived together only briefly prior to the time that the boys were born. In 1995, the mother filed a paternity action, resulting in a determination that the father was the natural father of the twins, and an order was issued requiring the father to pay child support. Three weeks after their birth, the father left the area and did not return until 1997.

Upon his return, the father filed an action to secure visitation rights to the twins and was awarded weekend visitation; however, he exercised his visitation rights only two or three times. During the instant adoption proceedings, the father testified he sought aid

to enforce visitation from the sheriff but was advised his only remedy would be through court proceedings. Because he did not have funds to hire a lawyer, he did not pursue enforcement of his visitation rights.

Absent his two weekend visits, the father has had no direct contact with his twin sons since 1997. Nevertheless, the paternal grandparents and other members of the father's family have maintained a relationship with the twins.

Although the father was ordered by the district court to pay child support in 1994, his payments for the first several years were infrequent, leading to a significant arrearage. Since April 2003, however, the father has been regularly employed and has consistently made monthly child support payments of $366 through an income withholding order. From April 2003 until June 2006, he paid $21,003.86 in child support on an obligation of $14,274, with the overage applied toward the arrearage.

The natural father is currently married and has three children by that marriage and one stepchild.

The natural mother of the twins married the petitioner stepfather in 2004. On June 13, 2006, the stepfather filed a petition to adopt the twins without obtaining the consent of the natural father. The stepfather requested the district court grant the adoption in light of the fact that father had not had any contact with the children for 9 years and had never voluntarily paid child support.

The district court held an evidentiary hearing on August 29, 2006, during which the father and mother testified. The father acknowledged in his testimony that he had not stayed in touch with the children but insisted that this was due to their mother's attempts to keep the children from him. The father also testified that he covers G.L.V. and M.J.V. under his health insurance policy but could not recall whether he had ever told their mother about the health insurance or provided her with an insurance card.

The mother testified that she had never prevented the father from visiting the children. She further explained that her husband, the twins' stepfather, was the only "father figure" that her children had ever known. She testified that the stepfather regularly helps

G.L.V. and M.J.V. with their homework and is actively involved in their sports events and scouting program.

The stepfather did not testify at the hearing.

District Court

After hearing argument from both sides, the district court took the matter under advisement in order to consider its decision in light of the amendment recently made to K.S.A. 59-2136(d), the statute controlling contested stepparent adoptions. The amendment, which became effective in 2006 upon publication, added the following statement to the end of K.S.A. 59-2136(d): "The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." K.S.A. 2007 Supp. 59-2136(d). Prior to the amendment, the statute contained no explicit reference to either the best interests of the child or the fitness of the nonconsenting parent in a stepparent adoption. See L. 2006, ch. 22, sec. 1.

On September 13, 2006, the district court issued a memorandum decision denying the adoption. Citing *In re Adoption of B.M.W.*, 268 Kan. 871, 2 P.3d 159 (2000), and *In re Adoption of K.J.B.*, 265 Kan. 90, 959 P.2d 853 (1998), the court noted that Kansas case law uses a two-sided ledger for determining whether a parent has failed to perform his or her parental duties during the 2 years before an adoption petition is filed. On one side of the ledger is the " 'love and affection' " that a parent shows his or her child; on the other is the financial support provided during that time. The court explained that under Kansas law, "[a] parent must fail both sides of the 'ledger' to have parental rights terminated."

The district court found that "[i]n this case, the father fails miserably the 'love and affection' test." However, the court also found that the father paid a substantial amount of child support during the prior 2 years. Thus, the court found that "[a]dherence to the precedents of the Kansas Supreme Court would require the Court to deny the adoption."

Turning to the 2006 amendment, the district court made the following observations in its memorandum decision:

"Unquestionably, the amendment changes the prior law that had held that the best interest of the child and the fitness of the parent were not factors to be considered by the Court in adoption cases. But what weight are these new factors to be given? Are the factors to be of relative equal weight or is the best interest of the child an overriding factor to which the others are subordinate? The statute itself does not answer these questions."

Having made these observations, the district court turned to the question of the father's fitness and of the best interests of G.L.V. and M.J.V. The court first noted that the mother did not argue that the father was an unfit parent and that no evidence had been presented that the father had not cared for the children he had with his current wife.

Considering the question of the best interests of the boys, the court found that "[c]onsideration of the best interest of the children does not clearly favor one parent over the other," in that both parents have the children's best interests at heart, differing only as to what they believe those interests to be. In addition, the court noted that "the father is African American and the mother and the petitioner [stepfather] are Caucasian. Severing ties with the father not only severs ties with his family but also may sever cultural ties."

Based on these findings, the court concluded that "the precedents of *K.J.B.* and *B.M.W.* dictate that the petition for adoption should be denied and that the 2006 amendment to K.S.A. 59-2136(d) does not change this outcome."

### Court of Appeals

The stepfather appealed the denial of the adoption petition, claiming that the district court misinterpreted the 2006 amendment to the stepparent adoption statute. A divided panel of the Court of Appeals affirmed, concluding that the 2006 amendment to K.S.A. 59-2136(d) did not abrogate the parental duties test (based on the two-sided ledger) previously adopted by the Kansas Supreme Court in *B.M.W.* and *K.J.B.* even though it granted a district court discretionary authority to consider the best interests of the child and the fitness of the nonconsenting parent. *G.L.V.*, 38 Kan. App. 2d at 154-55.

Judge Marquardt dissented, writing that the majority opinion's interpretation of the 2006 amendment to K.S.A. 59-2136(d) ren-

dered the recent amendment meaningless, as "[i]t is clear the legislature now intends that the trial court has the ability to consider the best interests of the children and is not required to merely focus on financial support alone as the criteria for denying an adoption." 38 Kan. App. 2d at 157 (Marquardt, J., dissenting).

## Discussion

The stepfather advanced two alternative arguments before the Court of Appeals and now raises the same issues on petition for review: He contends that either (1) under the provisions of K.S.A. 2007 Supp. 59-2136(d), the best interests of children involved in a contested stepparent adoption is an overriding factor in the determination; or, alternatively, (2) the two-sided ledger standard of love and affection and financial support adopted by this court in *B.M.W.* and *K.J.B.* has been converted to a three-column ledger under K.S.A. 2007 Supp. 59-2136(d), with the best interests of the child being entitled to equal weight and consideration in the stepparent adoption proceedings.

### Standard of Review

The district court denied the stepfather's petition for adoption in this case based on its findings that the father had assumed the duties of a parent for 2 years preceding the filing of the petition; thus, the father's consent was necessary to grant the adoption. The stepfather does not raise the issue of sufficiency of the district court's factual findings in this appeal. Instead, the stepfather argues that the district court and Court of Appeals majority misinterpreted the 2006 amendment in K.S.A. 2007 Supp. 59-2136(d) and thus misapplied the law relating to stepparent adoptions. The interpretation of a statute is a legal question over which we have unlimited review. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

### Principles of Statutory Interpretation

When courts are called upon to interpret statutes, the fundamental rule governing that interpretation is that "the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of

the statutory scheme it enacted." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts "need not resort to statutory construction." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, "[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent." *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004). But where "the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

As a general rule, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). Courts ascertain the legislature's intent behind a particular statutory provision

"from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]" *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989).

See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases involving statutory construction, "courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*." *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975).

Furthermore, when courts are called upon to review an amendment to a statute, they presume "the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect to such prior and existing law and legislation. [Citations omitted.]" *Rogers*

*v. Shanahan*, 221 Kan. 221, 225-26, 565 P.2d 1384 (1976). In the same vein, courts presume that when the legislature revises an existing law, it intended to change the law as it existed prior to the amendment. *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006).

This court has further explained in the specific area of adoption that adoption statutes are "strictly construed in favor of maintaining the rights of natural parents in those cases where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required." *B.M.W.*, 268 Kan. at 881-82.

### K.S.A. 2007 Supp. 59-2136(d)

The most recent version of the stepparent adoption statute, K.S.A. 2007 Supp. 59-2136(d), states:

"[T]he consent of [the natural] father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent. *The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted.*" (Emphasis added.)

The final sentence in the stepparent adoption statute—that relating to the best interests of the child and the fitness of the nonconsenting parent—was added when the statute was amended in 2006. See L. 2006, ch. 22, sec. 1. The Court of Appeals decision in this case is the only opinion of a Kansas appellate court interpreting the amended statute; the matter therefore comes before this court on petition for review as a case of first impression.

Both the district court and the Court of Appeals struggled with the interpretation and application of the amended statute. Though

the district court recognized that the amendment changed prior law by allowing the best interests of the child and the fitness of the nonconsenting parent to be considered in a stepparent adoption, the court had difficulty determining how these new considerations should be incorporated. As the court pondered in its memorandum opinion: "[W]hat weight are these new factors to be given? Are the factors to be of relative equal weight or is the best interest of the child an overriding factor to which the others are subordinate? The statute itself does not answer these questions."

The Court of Appeals also had difficulty reconciling the provisions of the amended statute, stating:

"It is difficult to ascertain exactly what the legislature was trying to accomplish with the 2006 amendment to the stepparent adoption statute. . . . On the one hand, the father's consent *must be given* to a stepparent adoption unless the father has failed to assume his parental duties for 2 consecutive years immediately preceding the filing of the petition for adoption. These duties include both financial support and love and affection. On the other hand, the court *may consider* the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. It is difficult to reconcile these inconsistent provisions.

"K.S.A. 2006 Supp. 59-2136(d) needs further clarification from the legislature. If the legislature intends that the natural parent's consent for a stepparent adoption is not required if the natural parent fails to provide *either* financial support *or* love and affection for 2 consecutive years immediately preceding the filing of the petition for adoption, this should be clearly stated. Likewise, if the legislature desires the best interests of the child to be the *controlling factor* in a stepparent adoption, it can easily say so. As long as the language remains unclear, however, courts shall continue to strictly construe the statute in favor of maintaining the rights of natural parents. *In re S.E.B.*, 257 Kan. [266, 273, 891 P.2d 440 (1995)]." *In re Adoption of G.L.V.*, 38 Kan. App. 2d 144, 154, 163 P.3d 334 (2007).

There can be no doubt that the 2006 amendment to K.S.A. 59-2136(d) altered the law regarding stepparent adoptions. In some respects, the statute became more ambiguous, as the legislature did not explicitly describe the role that the best interests of the child and the fitness of the nonconsenting parent should play in contested stepparent adoptions. Nevertheless, we must ascertain the legislative intent behind the enactment and, to the extent possible, reach a reasonable interpretation of the statutory language. See *Ross*, 245 Kan. at 594 ("it is the duty of the court, as far as

practicable, to reconcile the different provisions [of a statute] so as to make them consistent, harmonious, and sensible"); *Howard*, 218 Kan. 248, Syl. ¶ 2 ("courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*").

Because K.S.A. 2007 Supp. 59-2136(d) is ambiguous as to how the best interests of the child and fitness of the nonconsenting parent should affect courts' treatment of stepparent adoptions, we look to "the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" *Robinett*, 270 Kan. at 100-01; see *In re Adoption of B.M.W.*, 268 Kan. at 877.

*Historical Development of K.S.A. 2007 Supp. 59-2136(d)*

Before the enactment of the Kansas Adoption and Relinquishment Act (KARA), K.S.A. 59-2111 *et seq.*, in 1990 (see L. 1990, ch. 145), Kansas adoption law provided that consent to an adoption of any minor child could be given by "one of the parents, if the other has failed or refused to assume the duties of a parent for two consecutive years or is incapable of giving such consent." K.S.A. 1989 Supp. 59-2102(a)(3). The statute further stated that courts could disregard incidental visitations, contacts, communications, or contributions when determining whether a parent's consent was required. See K.S.A. 1989 Supp. 59-2102(b).

This court interpreted the prior adoption statute in the context of a stepparent adoption in *In re Adoption of F.A.R.*, 242 Kan. 231, 747 P.2d 145 (1987). In *F.A.R.*, the district court denied a stepparent adoption even though the father was imprisoned. This court affirmed, noting that "[i]n considering whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, *all the surrounding circumstances must be considered.*" (Emphasis added.) 242 Kan. at 236. In coming to its conclusion that the father had not failed to assume his parental duties, the court explained:

"It should also be noted that the best interests of the child, which is the paramount consideration in custody matters, is not controlling in determining the statutory

issue of whether a natural parent has failed to assume parental duties. We have no doubt that the best interests of the children in this case weighs heavily in favor of the adoption. It is unfortunate that this father apparently has little concern for the children's welfare and, instead, has chosen to stand upon his legal rights, but under our statutory scheme of adoption he has that choice.

"We also note that the fitness of the appellee as a parent is not a controlling factor under K.S.A. 1986 Supp. 59-2102(a)(3) as it would be in a proceeding to sever parental rights pursuant to K.S.A. 38-1581 *et seq.* [Citation omitted.]" *F.A.R.*, 242 Kan. at 235.

In 1990, the legislature amended the adoption laws by enacting a new section specifically dealing with stepparent adoptions. See K.S.A. 1990 Supp. 59-2136(d); L. 1990, ch. 145, sec. 26. This new section required a known father's consent in stepparent adoptions "unless such father has failed or refused to assume the duties of a parent for two consecutive years." The amended statute also included language from the pre-1990 adoption law that "the court may disregard incidental visitations, contacts, communications or contributions" when making its determination of whether the natural father's consent is required. K.S.A. 1990 Supp. 59-2136(d).

Although this court did not have the opportunity to interpret this initial stepparent adoption statute, the Court of Appeals considered the language of K.S.A. 1990 Supp. 59-2136(h)(4),—the section of the KARA governing termination of parental rights, which contained similar language to the stepparent adoption section—in *In re Adoption of Baby Boy S.*, 16 Kan. App. 2d 311, 822 P.2d 76 (1991). In that case, adoptive parents brought an action to terminate the natural father's parental rights to his infant son. Like the father in *F.A.R.*, the father in *Baby Boy S.* was in prison; however, the father in *Baby Boy S.* had failed to provide any support for the infant child's pregnant mother before he was incarcerated. The Court of Appeals affirmed the district court's termination of parental rights, relying principally on our decision in *F.A.R.* Quoting *F.A.R.*; 242 Kan. 231, Syl. ¶ 6, the *Baby Boy S.* court explained that a district court making a determination of whether a person's parental rights should be terminated under the new statute must consider " 'all the surrounding circumstances.' " 16 Kan. App. 2d at 312.

In 1991, the stepparent adoption statute was again amended to clarify that the 2 consecutive years described in the statute were to be "next preceding the filing of the petition for adoption" and to include the language as to the rebuttable presumption of relinquishing duties when a father has failed to pay a substantial portion of court-ordered child support. K.S.A. 1991 Supp. 59-2136(d); L. 1991, ch. 167, sec. 1.

Our first case interpreting these amendments was *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995). *S.E.B.* involved a stepfather's petition for adoption based on the stepfather's assertion that the father had failed or refused to assume his parental duties during the applicable time frame. The father contested the adoption, claiming that the reason he was unable to make more child support payments was that he had been imprisoned roughly 7 months out of the 2-year period. The district court granted the adoption.

This court reversed. 257 Kan. at 274. As it had in *F.A.R.*, the *S.E.B.* court noted that "[i]n making a determination in an adoption proceeding of whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances are to be considered." 257 Kan. at 273. The court reasoned:

"There is no doubt that the children are receiving the benefits of the care and support of a more stable home with Stepfather and Mother. There is substantial evidence to support the trial court's determination that it was in the best interests of the children that they remain in the home of Stepfather. The best interests of the children, however, is not the standard in deciding this adoption. The best interests of the children, which is the paramount consideration in custody matters, is not controlling in determining the statutory issue of whether a natural parent has failed to assume parental duties." 257 Kan. at 274.

Considering the facts of the case, the *S.E.B.* court determined that, viewing the facts in the light most favorable to the natural father, the reason he could not provide more support during the applicable 2-year-time frame was that he had been in prison roughly 30% of that time, during which time he was not financially able to support his children. The court found that these facts rebutted the statutory presumption in K.S.A. 59-2136(d) (Furse

1994). 257 Kan. at 274. The court therefore held that "[b]ecause the fitness of the nonconsenting parent and the best interests of the children are not controlling factors under K.S.A. 59-2136(d), we must find that under the circumstances the judge improperly granted the adoption." 257 Kan. at 274.

Less than 3 months after this court decided *S.E.B.*, a divided panel of the Court of Appeals issued its opinion in *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 897 P.2d 181 (1995). *C.R.D.* involved a stepparent adoption where the father had not visited or communicated with his son at all during the 2-year period and had paid roughly $1,100 in child support, as well as medical insurance, during that time, although he owed an arrearage of $6,000. The district court granted the adoption, finding that the father had failed to assume his parental duties during the 2 years preceding the filing of the adoption petition.

Judge Pierron, Judge Lewis, and Judge Green sat on the panel that heard the case on appeal, and each of these judges filed an opinion in the case. Judge Pierron, delivering the judgment of the court, "concede[d] that a substantial amount of the ordered child support was not paid" by the father. 21 Kan. App. 2d at 99. However, even though Judge Pierron recognized that K.S.A. 59-2136(d) (Furse 1994) established that a "rebuttable presumption of failure to assume parental responsibilities arises when there have been no substantial efforts or contributions made by a parent to his or her child," he stated that the panel "[did] not believe a presumption which allows the termination of parental rights notwithstanding substantial parental efforts or contributions [to be] constitutionally permissible." 21 Kan. App. 2d at 99.

This statement regarding the possible constitutional concerns associated with the rebuttable presumption in K.S.A. 59-2136(d) (Furse 1994) was rooted in the court's finding that "[b]asic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States." 21 Kan. App. 2d at 98. Citing *Quilloin v. Walcott*, 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1978), and *In re Guardianship of Williams*, 254 Kan. 814, 869 P.2d 661 (1994), Judge Pierron stated that the "right to be the legal parent of a child is

one of these [fundamental] rights, which cannot be abrogated except for compelling reasons." *C.R.D.*, 21 Kan. App. 2d at 98.

Judge Pierron ultimately found that because parental rights are fundamental rights that deserve constitutional protection, any ambiguity in the statute must be resolved in favor of the natural parents. Under this reasoning, he found that "in the instant case, as a matter of law, it cannot be said that the $1,100 and medical insurance coverage do not constitute *substantial efforts* and assumption of parental duties, incomplete and unsatisfactory though they may be." (Emphasis added.) 21 Kan. App. 2d at 99. The judgment of the district court granting the adoption was therefore reversed. 21 Kan. App. 2d at 100.

Judge Lewis filed a special concurrence, agreeing with Judge Pierron that the petition for adoption should have been denied. Judge Lewis first noted in his concurrence that "there are two sides to parenthood"—a " 'love and affection' side" and a "financial" side. 21 Kan. App. 2d at 100-01 (Lewis, J., concurring). He further explained that these two "sides" of parenthood should be viewed as a "ledger," and he "believe[d] that if we are going to judicially sever parental rights, there must be a failure to assume and perform the duties of a parent on both sides of the ledger." 21 Kan. App. 2d at 101 (Lewis, J., concurring). In this case, because the father did not wholly fail on the financial side, Judge Lewis found that the adoption should not be granted. 21 Kan. App. 2d at 103-04 (Lewis, J., concurring).

Judge Lewis further explained that he found the statutory language regarding the rebuttable presumption of failure to assume parental duties when a parent has failed to provide a substantial portion of financial support "somewhat troublesome." 21 Kan. App. 2d at 101 (Lewis, J., concurring). He explained his reservations as follows:

"It would appear that under the statute, a parent's right to consent to an adoption may be dispensed with if that parent has failed to provide a substantial portion of the court-ordered support even though the parent may be proven to be the most loving and dutiful parent. I believe that to the extent the statute permits such a result, it represents an unconstitutional violation of the due process right of natural parenthood as that right is defined in such cases as *In re Guardianship of Williams*,

254 Kan. 814, 869 P.2d 661 (1994). While I recognize that support is a most important element of parenthood, a failure to support, standing alone, should not be sufficient to sever the ties of a dutiful and loving parent. Neither do I believe that a parent may be deemed to have failed to exercise the required duties simply because he has failed to contact and shower parental affection on a child. If, for instance, the absent parent has regularly and faithfully supported a child and has paid the child support decreed by the court, I do not believe that such a person should be deemed to have failed to exercise the duties of a parent because he has failed to contact his child for a two-year period or because he has failed to shower love and affection on his child for that period. *I would suggest that it is only when a parent has failed to exercise all of the duties of a parent, including those of financial support and love and affection, that his right to consent to an adoption may be dispensed with.*" 21 Kan. App. 2d at 101-02 (Lewis, J., concurring).

Judge Green dissented, stating that because substantial competent evidence existed to support the district court's conclusion that father had failed to contribute a substantial portion of child's support, the court should affirm the district court's ruling that father failed to rebut the statutory presumption contained in K.S.A. 59-2136(d) (Furse 1994). 21 Kan. App. 2d at 104 (Green, J., dissenting).

The approach advocated by Judge Lewis in *C.R.D.* was clearly at odds with the previous decisions of Kansas courts, which had consistently held that a determination as to whether the nonconsenting parent had failed to assume parental duties was based on a review of all of the circumstances. See, *e.g.*, *S.E.B.*, 257 Kan. at 273; *F.A.R.*, 242 Kan. at 236. According to Judge Lewis' "ledger" approach, the only factors to be considered were the "love and affection" and financial sides of a two-sided ledger, both sides of which must be wholly abdicated in order to grant a stepparent adoption without one parent's consent. See *C.R.D.*, 21 Kan. App. 2d at 100-02 (Lewis, J., concurring).

In addition, it is noteworthy that Judge Lewis' "ledger" approach was only loosely based on the language of K.S.A. 59-2136(d) that concerns visitations, contacts, communications, contributions, and child support as required by judicial decree. Furthermore, the majority in *C.R.D.* did not follow the statutory rebuttable presumption concerning the requirement of substantial support, concluding that this presumption was of dubious constitutional stature.

Without commenting upon the constitutional considerations concerning the rebuttable presumption in K.S.A. 59-2136(d) discussed in *C.R.D.*, this court expressly endorsed the two-sided ledger approach from Judge Lewis' concurrence in *In re Adoption of K.J.B.*, 265 Kan. 90, 959 P.2d 853 (1998). *K.J.B.* involved an appeal from a district court's grant of a stepparent adoption. The district court had found that the father failed to assume the duties of a parent even though he unknowingly provided support to the three children in question by way of his Social Security disability payments. This court reversed, concluding that the financial support through the father's Social Security payments constituted an assumption of parental duties. 265 Kan. at 91, 99.

After finding that the Social Security payments counted as financial support that should be considered, the majority explained that the question before it was: "Must the father fail in both the financial and the affection, care, and interest aspects of parenting to fail under K.S.A. 59-2136(d) in assuming the duties of a parent?" 265 Kan. at 99. The court first noted that neither "the fitness of the natural father" nor "the best interests of the child" are "controlling factor[s]" in stepparent adoption cases. 265 Kan. at 95 (citing *S.E.B.*, 257 Kan. at 271). The court then held, in light of the fundamental rights of the natural parents, a parent must fail in both aspects of parental duties (financial and love and affection) before a stepparent adoption may be granted without both parents' consent. *J.K.B.*, 265 Kan. at 101-02. The court explained that "[t]he effect of our holding is an endorsement of Judge Lewis' concurring opinion in *C.R.D.* To judicially sever parental rights under K.S.A. 59-2136(d), there must be a failure 'on both sides of the ledger.' " 265 Kan. at 101-02. The majority did not discuss the effect of the rebuttable presumption in K.S.A. 59-2136(d) on its decision, stating only that it "agree[d]" with the father's position that "the social security disability payments received by the mother for the children's support serve to rebut the presumption that he did not assume parental duties." 265 Kan. at 98.

Justice Abbott, joined by Chief Justice McFarland, dissented, stating that he was "of the opinion the legislature intended that the courts look at the entire picture in determining whether a parent

has performed parental duties during the 2 years next preceding the filing of a petition for adoption pursuant to K.S.A. 59-2136." 265 Kan. at 102 (Abbott, J., dissenting). Justice Abbott explained that because the father had absolutely no contact with the children during the applicable 2-year period and because the financial support he provided was inconclusive, he would affirm the district court's grant of the stepparent adoption. 265 Kan. at 102-03 (Abbott, J., dissenting).

Less than 2 years later, this court was called on to reconsider the viability of the two-sided "ledger" approach in *In re Adoption of B.M.W.*, 268 Kan. 871, 2 P.3d 159 (2000). The district court in that case had denied the stepparent adoption, finding that although the natural father failed to provide love and affection to his child for the 2-year period, he did provide a substantial portion of financial support during the same period. The stepfather appealed, raising similar arguments to the claims raised in the instant appeal. This court summarized the stepfather's arguments in *B.M.W.* as follows:

"The stepfather argues that *K.J.B.*'s analysis regarding the parental duties 'ledger' is incorrect because the effect of that holding is that payment of a substantial portion of court-ordered child support creates an irrebuttable presumption that consent of the father for the stepparent to adopt is required. The stepfather asserts that the legislature did not create such a presumption but, in fact, established a rebuttable presumption that the knowing voluntary failure to pay a substantial portion of support when financially able to pay support is failure to assume the duties of a parent.

. . . .

"The stepfather asserts that 'love and affection' and financial support were not intended by the legislature to be 'two sides of a ledger,' and that each side of the ledger must fail before the court can sever parental rights and permit a stepparent adoption. The stepfather argues that the legislature intended that lack of love and affection and the failure to substantially support are separate criterion for determining whether a father has failed to assume parental duties. The stepfather further argues that if either the love and affection or the financial support of the natural parent is lacking, the court may, upon consideration of all the circumstances, sever parental rights and permit the stepparent adoption." 268 Kan. at 876.

To resolve these questions, the *B.M.W.* court reviewed legislative history of K.S.A. 59-2136(d) and the circumstances surround-

ing the 1991 amendment to include the language of the statutory presumption. See L. 1991, ch. 167, sec. 1; 268 Kan. at 877-80. The court recognized that an Indiana statute served as a model for the 1991 amendment. See Ind. Code § 31-3-1-6(g)(1) (1990 Supp.). In commenting upon that statute, the court noted that Indiana law provides that "a natural parent's consent for a stepparent adoption is not required where the parent without justifiable cause fails to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so for a period of 1 year." 268 Kan. at 880. We noted that Indiana courts have "held that the provisions regarding communication and failure to support are framed in the disjunctive, thus demonstrating that either of the two criteria is sufficient to establish that the adoption without parental consent may move forward. [Citations omitted.]" 268 Kan. at 880.

The stepfather in *B.M.W.* argued that the legislative history of K.S.A. 59-2136(d) demonstrated that the legislature intended to establish that "both support and visitation, contacts, communications, or contributions are aspects of parental duties, and failure in either aspect in stepparent adoption may result in termination of the natural parent's rights." 268 Kan. at 880. We rejected the stepfather's interpretation, however, noting that his arguments were inconsistent with the court's recent holding in *K.J.B.*:

"The stepfather's interpretation of K.S.A. 59-2136(d) is contrary to our holding in *K.J.B. K.J.B.* was decided in 1998, and the legislature has not amended K.S.A. 59-2136(d) to correct a misinterpretation of the statute. When the legislature fails to modify a statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation. [Citation omitted.]" *B.M.W.*, 268 Kan. at 880-81.

Despite its decision to affirm the district court's denial of the adoption, the *B.M.W.* court did recognize that the language in *K.J.B.*, taken from Judge Pierron's opinion in *C.R.D.*, regarding the constitutional protection for natural parents' rights was misleading, in that the decision by the United State Supreme Court that was used as a basis for that language does not prohibit a stepparent adoption. *B.M.W.*, 268 Kan. at 881. The court further recognized:

"The 'ledger' model applied by the *K.J.B.* court is not entirely based on K.S.A. 59-2136(d) in that the statute does not expressly delineate 'love and affection' as a parental duty. The statute refers to 'visitations, contacts, communications or contributions' and states that if those are incidental only, the court may disregard them in determining whether a father's consent is required. Therefore, if parental duties as outlined in K.S.A. 59-2136(d) can be charted on a 'ledger,' 'visitations, contacts, communications, or contributions' occupy one side, and 'child support as required by judicial decree' occupies the other." *B.M.W.*, 268 Kan. at 882.

*B.M.W.* reiterated that "all the surrounding circumstances are to be considered" when a court makes "a determination in an adoption proceeding of whether a nonconsenting parent has failed to assume his or her parental duties for 2 consecutive years." 268 Kan. at 882. The court further stated that "[a]lthough a child can be adopted without the consent of one of the natural parents, the facts warranting an exception as prescribed by statute must be clearly proven. [Citation omitted.]" 268 Kan. at 882. Finally, the *B.M.W.* court emphasized, as previous decisions had before, that "neither the best interests of the child nor the fitness of the nonconsenting parent are controlling factors" in a court's determination as to whether a stepparent adoption should be granted under K.S.A. 59-2136(d). 268 Kan. at 881.

Although the court in *B.M.W.* found that the father in that case had failed to visit, contact, or communicate with his child during the applicable 2-year period, the court ultimately affirmed the district court's denial of the adoption petition, 268 Kan. at 884, because "the father did provide a substantial portion of the child support required by judicial decree; therefore, the rebuttable presumption of failure to assume parental duties does not arise." 268 Kan. at 882. Chief Justice McFarland and Justice Abbott, the two justices who dissented in *K.J.B.*, concurred in the result. 268 Kan. at 884.

As this discussion of the development of Kansas stepparent adoption law demonstrates, we have consistently repeated that all surrounding circumstances are to be considered when determining whether a natural parent must consent to a stepparent adoption— that is, whether the natural parent has "assume[d] the duties of a parent for two consecutive years next preceding the filing of the

petition for adoption or is incapable of giving such consent." See K.S.A. 2007 Supp. 59-2136(d); *B.M.W.*, 268 Kan. at 882. This statement recognizes that there are numerous duties associated with being a parent to a child, and all such duties—even though not explicitly enumerated—may be considered. We have focused primarily on two very basic and important duties of parents—love and affection on one hand and financial support on the other—in the context of stepparent adoptions because these duties are contemplated by the statute. In addition, these two important duties—which have formed the basis for the two-sided ledger approach—are capable of being measured and documented, whereas other parental duties may be less tangible.

We emphasize that the two-sided ledger approach is not under attack in this appeal. The legislature has been aware of this court's interpretation of K.S.A. 59-2136(d) and has not amended the statute to provide an alternative framework for addressing stepparent adoptions. See *B.M.W.*, 268 Kan. at 880-84. Although the legislature amended the statute in 2006, it did not alter the language regarding the assumption of parental duties. The stepfather's petition for review in this case raises only issues relating to the 2006 amendment:

"Whether the best interests of the children involved in a contested stepparent adoption matter is an overriding factor, or alternatively:
"Whether the two sided ledger standard of *K.J.B.* and *B.M.W.* should now be a three column ledger."

Having considered the historical treatment of stepparent adoptions by Kansas courts, we turn to the legislature's motivation for enacting its most recent amendment.

*Legislative History Regarding the 2006 Amendment*

In 2006, the legislature amended K.S.A. 59-2136(d) for the first time since it added the rebuttable presumption language in 1991 to add the following sentence to the end of the section: "The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." K.S.A. 2007 Supp. 59-2136(d); L. 2006,

ch. 22, sec. 1. The Court of Appeals' decision in this case is the first and only case interpreting the amendment to date.

The 2006 amendment was enacted as part of House Bill 2665, L. 2006, ch. 22, sec. 1 (H.B. 2665), which also amended K.S.A. 59-2136(h) (governing the termination of parental rights in adoption cases) to include a similar provision. See K.S.A. 2007 Supp. 59-2136(h)(2)(A). The majority opinion by the Court of Appeals in this case correctly points out that the version of H.B. 2665 originally introduced did not contain any change to the stepparent adoption provisions of K.S.A. 59-2136(d), but instead focused on the provisions concerning the termination of parental rights. See *In re Adoption of G.L.V.*, 38 Kan. App. 2d 144, 150-52, 163 P.3d 334 (2007). As the Court of Appeals explained below:

"Contrary to the district court's findings [that the legislature changed the wording of the amendment to state that the court 'shall' consider the best interests of the child to stating that the court 'may' consider those interests], the original version of H.B. 2665 did not amend K.S.A. 59-2136(d). Instead, it only amended 59-2136(h), which is a general provision that sets forth the factors a district court should consider when determining whether to terminate parental rights in an adoption case. [Citation omitted.] The original version of H.B. 2665 amended 59-2136(h) by adding the following italicized language: 'In making a finding *whether parental rights shall be terminated* under this subsection, the court: (1) *Shall consider and weigh the best interest of the child. . . .*' The House Judiciary Committee later amended H.B. 2665 by changing the above-mentioned 'shall' in 59-2136(h) to 'may' and also by adding the best interests of the child language to 59-2136(d). House J. 2006, p. 1234." *G.L.V.*, 38 Kan. App. 2d at 150.

The stepparent adoption amendment that was eventually incorporated in H.B. 2665 was originally included as part of House Bill 2914 (H.B. 2914), which would have added the following provision to the end of K.S.A. 59-2136(d):

"The failure of a father to provide a substantial portion of the child support because such father has been convicted and is imprisoned shall not be sufficient to rebut such rebuttable presumption. Failure of the father to either provide a substantial portion of the child support as required by judicial decree or perform the other duties of a parent shall be sufficient for the court to determine that such father's consent is not required in a stepparent adoption. The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted."

Only the final sentence of this proposed bill was incorporated into H.B. 2665 (and eventually, K.S.A. 2007 Supp. 59-2136[d]). The Court of Appeals, in considering these two bills, found that the legislature's omission of the second sentence in the H.B. 2914 amendment (stating that failure to either provide a substantial portion of the requisite child support or perform other duties is sufficient to determine that a father's consent is not required) from its enactment "further supports the interpretation that the legislature did not intend to change the parental duties test in determining whether a stepparent adoption can be granted without the natural parent's consent." *G.L.V.*, 38 Kan. App. 2d at 152.

This assumption by the Court of Appeals—that the omission of the second sentence in H.B. 2914 from its eventual enactment indicated support for the current "ledger" test—is based only on the *absence* of the language from K.S.A. 2007 Supp. 59-2136(d). The omission of language from proposed legislation seldom, if ever, provides support for determining legislative intent. While it may be true that the legislature chose to omit that language for the reasons espoused in the majority opinion of the Court of Appeals, it may be equally true that the language was omitted for some other reason. For example, notes for the House Judiciary Committee provide no support for the Court of Appeals' interpretation, but those notes do state that "[s]ome committee members expressed that just because a person is incarcerated doesn't mean that one doesn't pay child support, granted that payment is not as much as one would be able to pay if they weren't incarcerated." Minutes, House Judiciary Committee, February 15, 2006. It is just as plausible to interpret these concerns and the eventual incorporation of only the last sentence into the amendment as evidence that the committee members favored a totality of the circumstances approach similar to that used by this court prior to its adoption of the "ledger" test.

Perhaps the only thing that is certain from the committee notes and legislative history of H.B. 2665 is that the impetus behind the bill's consideration and eventual passage was the legislature's concern that the best interests of the child (and fitness of the nonconsenting parent) be a factor for consideration in adoption cases. At

a hearing before the House Judiciary Committee, one witness specifically focused on this court's case law, which holds that the best interests of the child are not considered in adoption cases. See Minutes, House Judiciary Committee, February 6, 2006 (citing *S.E.B.* as holding that "the 'best interest' of a child is not a stated factor for the Court to consider with terminating the rights of a biological parent"). The bill's sponsor explained that the motivation behind the bill was to "protect children in adoption cases." Minutes, House Judiciary Committee, February 6, 2006.

Contrary to the findings by the district court and the Court of Appeals in this case, the legislative history behind the 2006 amendment in K.S.A. 2007 Supp. 59-2136(d) provides little guidance as to the legislative intent in enacting the new language. Nevertheless, it is clear that the legislature intended that courts in adoption cases at least have the option of considering the best interests of the child and the fitness of the nonconsenting parent. The question is how this intent, as codified in the eventual amendment, alters the ledger test previously utilized by this court in stepparent adoption cases.

Analysis

In the case before this court, the stepfather does not dispute the district court's findings that the natural father has assumed his parental duties by paying all of the court-ordered child support due during the 2 years preceding the adoption petition. The question before us, put simply, is whether the 2006 amendment in K.S.A. 2007 Supp. 59-2136(d) permits a district court to override the statute's explicit requirement that a natural father who has assumed the duties of a parent give his consent to the stepparent adoption if it determines that the adoption is in the child's best interests. We hold that it does not.

Our decision is guided by two important considerations with reference to K.S.A. 2007 Supp. 59-2136(d). First, a natural parent who has assumed his or her parental responsibilities has a fundamental right, protected by the United States and Kansas Constitutions, to raise his or her child, and the consent requirement in the stepparent adoption statute codifies these constitutional pro-

tections. Second, K.S.A. 2007 Supp. 59-2136(d) expresses the public policy of Kansas by implicitly incorporating the determination that the best interests of the child is served by fostering the child's relationship with the natural parent in cases where the parent has assumed the duties of a parent toward the child. These two aspects of the statute have existed both before and after the 2006 amendment; the following discussion addresses each consideration in detail.

### Constitutional Protection

K.S.A. 2007 Supp. 59-2136(d) clearly requires a natural parent's consent where that parent has assumed the duties of a parent for the 2 years preceding the filing of the petition for a stepparent adoption. This portion of the statute existed before the 2006 amendment and remains unchanged after the addition of the amended language. In *K.J.B.*, we stated that the requirement of parental consent in a stepparent adoption is based on a recognition that a natural parent has a fundamental right, protected by the United States and Kansas Constitutions, to raise his or her child. See *In re Adoption of K.J.B.*, 265 Kan. 90, 101, 959 P.2d 853 (1998). In our later cases, however, we have indicated that this statement is too broad, as neither the state nor federal Constitutions prohibit stepparent adoptions in all circumstances. See *In re Adoption of B.M.W.*, 268 Kan. 871, 881, 2 P.3d 159 (2000). Because the fundamental right to parent a child lies at the heart of our jurisprudence relating to stepparent adoptions, we take time now to further clarify these statements.

The Court of Appeals' original summary in *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 98, 897 P.2d 181 (1995), of the constitutional protections involved in stepparent adoptions—subsequently quoted with agreement by this court in *K.J.B.*, 265 Kan. at 101—that " '[b]asic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States . . . which cannot be abrogated except for compelling reasons,' " cited as support the United States Supreme Court's decision in *Quilloin v. Walcott*, 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1979), and this court's

decision in *In re Guardianship of Williams*, 254 Kan. 814, 869 P.2d 661 (1994). Despite this broad statement, however, neither of these opinions explicitly hold that constitutional protections extend to a natural parent regardless of the circumstances. Instead, our review of these cases indicates that a natural parent's right to raise his or her child is protected to the extent that the parent demonstrates a commitment to his or her parental responsibilities.

In *Quilloin*, the Court considered the constitutionality of a Georgia statute providing that when a child is born out of wedlock, only the natural mother's consent is necessary in that child's adoption unless the father legitimized the child by marrying the mother or by seeking a court order stating that the child may inherit from the father. The father in *Quilloin* had never legitimized the child in question, but instead filed for visitation rights after the child's stepfather filed a petition for adoption. The district court granted the stepfather's petition for adoption based on the court's finding that the adoption was in the best interests of the child.

Considering these facts, the United States Supreme Court unanimously held that the father's substantive rights were not violated by the application of the best interests of the child standard. 434 U.S. at 255. The Court explained:

"We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected. [Citations omitted.] 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [Citation omitted.] And it is now firmly established that 'freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' [Citation omitted.]

"We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' [Citation omitted.] But this is not a case in which the unwed father at any time had, or sought, actual or legal custody of his child. Nor is this a case in which the proposed adoption would place the child with a new set of parents with whom the child had never before lived. Rather, the result of the adoption in this case is to give full recognition to a family unit already in existence, a result desired by all concerned, except appellant [the natural father]. Whatever might be required in other

situations, we cannot say that the State was required in this situation to find anything more than that the adoption, and denial of legitimation, were in the 'best interests of the child.'" 434 U.S. at 255.

The Court later explained this differentiation in constitutional protection for natural parents in *Lehr v. Robertson*, 463 U.S. 248, 261-62, 77 L. Ed. 2d 614, 103 S. Ct. 2985 (1983):

"When an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' [citation omitted], his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he 'act[s] as a father toward his children.' [Citation omitted.] But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. '[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in "promot[ing] a way of life" through the instruction of children as well as from the fact of blood relationship.' [Citations omitted.]

"The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie."

The Constitution's Due Process Clause only provides substantive protection for parental rights when the parents have assumed their parental duties. See K.S.A. 2007 Supp. 59-2136(d). In cases where a parent has not "accept[ed] some measure of responsibility for the child's future," the Constitution does not protect a merely biological relationship. *Lehr*, 463 U.S. at 262.

In *Williams*, this court held in a custody action between a natural mother and a nonparent friend who had assumed custody of the children at the mother's request that "absent highly unusual or extraordinary circumstances the parental preference doctrine is to be applied in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent." 254 Kan. at 828. This holding was rooted in the court's recognition that natural parents have greater rights in the rearing of their children than nonparents. See 254 Kan. at 827-28.

Nevertheless, this court noted that there are exceptions to the general rule that natural parents' rights merit greater protection. Quoting *In re Kailer*, 123 Kan. 229, 231, 255 Pac. 41 (1927), the *Williams* court explained:

" '[T]he welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children *until the exceptional case arises* where the parents are dead, or where they are unfit to be entrusted with the custody and rearing of their children and *have forfeited this right because of breach of parental duty*, or where the right has been prejudiced by the discord of the parents themselves.' " (Emphasis added.) 254 Kan. at 822.

*Williams* makes it clear under state law, as *Quilloin* did under federal law, that a natural parent's right to raise his or her child is tempered by the extent that the parent has assumed his or her parental responsibilities. In this way, contrary to the courts' determinations in *C.R.D.* and *K.J.B.*, K.S.A. 2007 Supp. 59-2136(d) is completely in keeping with the Constitution's substantive protections of parental rights. If a parent has assumed his or her parental duties, then a stepparent adoption may not be granted without that parent's consent. If a parent has failed to assume those duties, the adoption does not require that parent's consent. The determination as to whether a parent has assumed his or her parental duties or has failed to do so does not itself involve a parent's constitutional rights, but instead acts as a threshold determination as to whether the Constitution is substantively involved at all. See *Quilloin*, 434 U.S. at 256. As this court noted in *B.M.W.*, the Constitution does not prohibit a stepparent adoption. 268 Kan. at 881.

The plain language of K.S.A. 59-2136(d)—both before and after the 2006 amendment—states that the consent of a known father must be given to a stepparent adoption unless such father "has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent." The statute then provides a guide for the court "[i]n determining whether a father's consent is

required" in a stepparent adoption, stating: "The court may disregard incidental visitations, contacts, communications or contributions." The statute continues by providing a method for determining when a father has failed or refused to assume the duties of a parent relating to child support required by judicial decree.

Because the natural father in this case has assumed a sufficient level of parental responsibility under Kansas law, his rights as a parent are entitled to constitutional protection. See *Lehr*, 463 U.S. at 262. K.S.A. 59-2136(d), both now and before the 2006 amendment, provides this protection by requiring the father's consent before a stepparent adoption can be granted. The father has not consented to the adoption in this case, and his decision to withhold his consent cannot be overridden absent compelling circumstances. See *Williams*, 254 Kan. at 822.

### Implicit Determination of Best Interests

The stepfather argues on appeal that when the legislature amended K.S.A. 59-2136(d) in 2006 to include the best interests of the child as a consideration in stepparent adoptions, it intended the best interests to be either an overarching concern or, at a minimum, a concern on equal footing with the court's consideration of whether the nonconsenting parent assumed the parental duties of love and affection and financial support. Placed in the context of our previous discussion, the stepfather is essentially arguing that a court's determination of the best interests of the child may override a nonconsenting parent's fundamental rights *even where that parent has assumed his or her parental responsibilities*. We disagree with the stepfather's interpretation for two important reasons: First, this interpretation is inconsistent with the plain language of the statute, and second, this interpretation is inconsistent with the legislature's implicit recognition that the best interests of the child are protected in the usual case by protecting the natural parent-child relationship.

First, as we have previously indicated, the plain language of the stepparent adoption statute insists that a natural parent's consent *"must be given* to [a stepparent] adoption" unless the parent has failed to assume his or her parental duties. K.S.A. 2007 Supp. 59-

2136(d). Reading the statute as a whole, it would make little sense for the legislature to require natural parents' consent to a stepparent adoption under these circumstances—where a parent has assumed parental duties for the 2 preceding years—and then, in the same section, to state that even in the case of a parent who has assumed the duties of a parent, adoption may be granted without consent of the natural parent if a court determines that it is in the best interests of the child.

The language of the 2006 amendment further illustrates that the legislature did not intend the best interests of the child to be the overarching consideration in all stepparent adoptions. While the stepparent adoption statute has required, since its enactment in 1991, that a natural parent's consent must be given to a stepparent adoption when the natural parent has assumed the duties of a parent, the 2006 amendment provides that "[t]he court *may consider* the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." (Emphasis added.) K.S.A. 2007 Supp. 59-2136(d); L. 2006, ch. 22, sec. 1. Contrary to the stepfather's arguments in this case, the permissive language of the 2006 amendment does not override the statute's mandatory consent.

Second, we believe that the legislature—even with the 2006 amendment—has made a determination under law that the best interests of a child subject of a stepparent adoption is served by fostering the natural parent-child relationship where the parent has assumed his or her parental obligations. As this court explained in *Williams*, " 'the policy of the state proceeds on the theory that [children's] welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied.' " 254 Kan. at 822 (quoting *Kailer*, 123 Kan. at 231). Thus, the best interests of the child as expressed in the 2006 amendment does not trump the requirement that a natural parent who has assumed his or her parental responsibilities must consent before a stepparent adoption can be granted.

We observe that our decision in this case does not extend to the statutory language in the amendment dealing with the "fitness of the nonconsenting parent." K.S.A. 2007 Supp. 59-2136(d). Unfit-

ness was simply not an issue in this case. As the district court noted in its decision, there was no allegation of unfitness of the natural father. No evidence was presented on this issue upon hearing before the district court, and the stepfather has raised no question of unfitness on appeal. Thus, we do not in this opinion determine what the legislature intended by this phrase, except to acknowledge that the fitness of a nonconsenting parent is a much different question.

### Controlling Interpretation of K.S.A. 2007 Supp. 59-2136(d)

When it amended K.S.A. 59-2136(d) in 2006, the legislature expressly authorized a court to consider both the best interests and fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. Nevertheless, a district court's consideration of the best interests of the child is not divorced from the entire stepparent adoption statute, which explicitly requires that a natural parent's consent be given when that parent has assumed his or her parental responsibilities during the 2 years preceding the filing of the adoption petition. Reconciling these provisions, we find that the legislature implicitly determined that the best interests of a child is to protect the child's relationship with the child's natural parent when that parent has embraced his or her parental responsibilities, consistent with this court's previous interpretations of K.S.A. 59-2136(d).

This is not to say that the 2006 amendment has no effect on stepparent adoptions. The additional language expressly authorizing a court to consider the best interests of the child in determining whether to grant a stepparent adoption provides the court with additional discretionary powers to consider the best interests of the child in denying the adoption—even where a natural parent has not assumed the duties of a parent as articulated by this court—for unique reasons. For example, a court may determine, based upon testimony of the child or other evidence, that the child desires to remain the son or daughter of the natural parent based upon the parent's promise of commitment to the child, based upon friction in the stepparent family, or a pattern of instability in the stepparent history. The provision does not, however, permit a court to

override the requirement in K.S.A. 2007 Supp. 59-2136(d) of mandatory consent when a natural parent has assumed his or her parental responsibilities.

We note that the legislature, subject to the constitutional protection afforded a natural parent, could have expressly provided that best interests of the child be given overriding consideration by the court in a stepparent adoption. However, the legislature did not do so.

In this case, the district court found that the natural father had been making regular contributions to the court-ordered child support by way of an automatic garnishment of his wages. In fact, the father paid the entire amount of child support due during the 2-year period preceding the adoption and made significant payments toward his arrearage during that same period. These payments, when coupled with the father's expressed interest at the adoption hearing that he would like the children to continue to have contact with his extended family and to meet his other children at some time, demonstrate, considering all of the circumstances, that the father did not fail to assume his parental duties in the 2 years preceding the adoption. K.S.A. 2007 Supp. 59-2136(d) therefore required his consent to the stepparent adoption. He did not give that consent, and the district court appropriately denied the adoption petition.

The decisions of the district court and Court of Appeals are affirmed.