24 Kan. App.2d 783 (1997)
955 P.2d 618
In re Adoption of D.M.M.
No. 78,239.[1]
Court of Appeals of Kansas.
Opinion filed December 12, 1997.
Mark W. Works, of Works, Works, & Works, P.A., of Topeka, for appellant natural father.
Austin K. Vincent, of Topeka, for appellees E.K. and B.K.
Before GERNON, P.J., KNUDSON, J., and VAN HAMPTON, District Judge, assigned.
HAMPTON, J.:
D.R.G., Jr., (D.G.) D.M.M.'s natural father, appeals the trial court's adoption decree which granted the petition brought by E.K. and B.K. and declared them to be the adoptive parents of D.M.M. The decree of adoption included a finding that the natural mother had consented to the adoption and incorporated *784 the court's earlier order terminating D.G.'s parental rights pursuant to K.S.A. 59-2136(h)(4).
D.G. claims the trial court erred in terminating his parental rights. Specifically, he claims his constitutional right of due process was denied in that the court required him to provide support to the mother prior to the birth in order to preserve his parental rights even though paternity was in question. He argues 59-2136(h)(4) only applies if there is one individual putative father, not when paternity is uncertain. We disagree and affirm the trial court.
In the termination proceeding, D.G. admitted that the natural mother, S.M., had notified him when she first learned she was pregnant in the summer of 1995. However, he claimed she later informed him she was not pregnant and that, therefore, he was unaware of the pregnancy. S.M.'s testimony was that when D.G. first called her, she told him she was unsure whether she was pregnant but, upon taking a home pregnancy test, she called him in early August 1995 and notified him she was indeed pregnant and did not later inform him otherwise. Other witnesses testified that D.G. was aware of S.M.'s pregnancy prior to D.M.M.'s birth on March 17, 1996. D.G.'s version of the pregnancy notification and his alleged lack of knowledge exceeded the trial court's credulity.
D.G. relied upon inherently contradictory assertions in the termination trialhis alleged lack of knowledge of the pregnancy and the fact another man was named as a potential father to D.M.M.as "reasonable cause" for not providing support to the mother or the child before paternity was determined. A paternity test was performed, and D.G. was established as the biological father in August 1996. Nevertheless, D.G. only visited the child two times and provided no financial support for the mother or child prior to the trial in November 1996. The trial court thoroughly addressed the facts presented in relation to D.G.'s parental rights and, although D.G. did not raise them, considered his related constitutional rights. The child's mother and the other putative father, D.D., consented to D.M.M.'s adoption.
D.G. contends the trial court denied him due process when it terminated his parental rights for failure to support the mother of his child for 6 months prior to the child's birth.

*785 "When a father or alleged father appears and asserts parental rights, the court shall determine parentage.... Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:
"(1) The father abandoned or neglected the child after having knowledge of the child's birth;
....
"(3) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;
"(4) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;
"(5) the father abandoned the mother after having knowledge of the pregnancy." K.S.A. 59-2136(h).
D.G. argues that since his case involves a fundamental constitutional right of a natural parent to the custody of his child, the appellate court should apply strict scrutiny in its review of the statute and should reverse the trial court's decision which is based upon it. However, this court has examined the constitutionality of 59-2136(h) in a number of cases and, in each one, has found the statute does not violate the constitutional rights of a biological father.
In the case of In re Baby Boy N., 19 Kan. App.2d 574, 874 P.2d 680, rev. denied 255 Kan. 1001, cert. denied 513 U.S. 1018 (1994), the facts were similar to those in the present case. The natural parents had never been married. The natural mother consented to the child's adoption over the objections of the natural father, who knew of the mother's pregnancy and provided her with no type of financial or other support for the 6 months prior to the birth of the child. After the father objected to the adoption, the trial court determined the father had failed to support the mother during the 6 months preceding the child's birth and had abandoned her after learning she was pregnant. Consequently, the trial court terminated his rights pursuant to 59-2136(h).
This court, in Baby Boy N., analyzed 59-2136(h)(4) and (5) and held the statute was not unconstitutional, nor did it deny the father due process protection. The court stated the statute did not violate due process because it "provides the father with notice and an *786 opportunity to be heard and appointed counsel to represent him if necessary. In addition, his consent will be required unless one of the seven situations in [the statute] is proven by clear and convincing evidence." 19 Kan. App.2d at 585. Since the statute requires the safeguard of a clear and convincing burden of proof before terminating a natural parent's rights, "[i]n cases such as this, the rights of a natural parent are properly protected, and the `parental preference' doctrine is preempted." 19 Kan. App.2d at 585. Thus, the standard of review in the case at hand does not involve analyzing the constitutionality of K.S.A. 59-2136(h), and the usual standard of review in adoption cases applies.
"A trial court's decision to terminate a natural father's parental rights under K.S.A. 59-2136(h) will be upheld if it is supported by substantial competent evidence. An appellate court does not weigh the evidence or pass upon the credibility of witnesses and must review the evidence in the light most favorable to the party prevailing below." In re K.D.O., 20 Kan. App.2d 559, Syl. ¶ 1, 889 P.2d 1158 (1995).
The decision of the trial court to terminate D.G.'s parental rights was within that court's discretion after weighing all the evidence. In determining whether the trial court abused its discretion, the test is "`whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision.'" State v. Griffin, 246 Kan. 320, 326, 787 P.2d 701 (1990) (quoting Hoffman v. Haug, 242 Kan. 867, 873, 752 P.2d 124 [1988]). The evidence recited in the journal entry terminating D.G.'s parental rights satisfies the requisite standards, and this court will not disturb the trial court's decision.
D.G. next claims that the trial court denied his due process rights when it terminated his parental rights for failure to support S.M. D.G. claims he had no reasonable opportunity to be heard or to provide support for the child 6 months prior to its birth because paternity was in doubt. D.G.'s assertion is simply untrue.
This court recently decided the issue of due process in termination of parental rights in In re Adoption of Baby Boy S., 22 Kan. App.2d 119, 912 P.2d 761, rev. denied 260 Kan. 929, cert. denied 136 L. Ed.2d 123 (1996), and affirmed the trial court's termination of the father's parental rights. The father of the child in Baby Boy *787 S. also claimed the application of K.S.A. 59-2136(h) violated his due process rights by allowing the child's adoption without his consent.
In Baby Boy S., the father, (V.A.), learned through an adoption agency that the mother intended to place their child for adoption. V.A. called the agency to convey his opposition to the adoption. V.A., however, did not tell the agency he was willing to support R.S. during her pregnancy and did not "ask for R.S.'s address, nor did he ask the agency to convey any message offering support. He did not contact R.S.'s family or any of her known friends to offer financial support or to express his opposition to the adoption." 22 Kan. App.2d at 122. The child was placed with adoptive parents immediately after birth, and V.A.'s parental rights were terminated for failing to support the mother without reasonable cause during the 6 months prior to the child's birth. V.A. argued the application of the Kansas termination statute violated his due process rights. This court referred to its earlier decision in In re Baby Boy N. and affirmed the district court's decision, stating:
"`There is every reason for protecting the rights of a father to children, illegitimate or not, whom he has reared, loved, and supported. This is the true parental right which we protect, and it involves not only the individual rights of the father but the broader concept of family, which is also entitled to protection. By the same token, where the father's "right" is purely biological and there has been no family formed, no bonding, no support, and no love, that right seems to be obviously less deserving of support. Those instances specified under K.S.A. 38-113a and K.S.A. 1993 Supp. 59-2136(h)(1)-(7) in which consent may be declared unnecessary are examples of situations in which the right of a natural father is little more than biological.'" 22 Kan. App.2d at 126-27 (quoting In re Baby Boy N., 19 Kan. App.2d at 583-84).
In its opinion, the court in Baby Boy S. used as a foundation stone a self-evident truth that it is not unreasonable to require substantial efforts by an unwed father to maintain contact with the mother and participate in the pregnancy and birth. The trial court in the present case echoed that language by stating in the November 22, 1996, journal entry of judgment terminating parental rights:
"The fact that a man knows only that he was a possible father during the pregnancy does not relieve him from the responsibility to support the mother during the pregnancy. If he wishes to later assert parental rights, he must act during the *788 pregnancy to protect those rights. To find otherwise would circumvent the purpose of the statute, to ensure support for the mother during the pregnancy, and render it meaningless."
The trial court specifically negated the viability of D.G.'s paternity argument in its hearing on the motion to reconsider. In denying the motion, the court declared that D.G. could not
"just sit back and see what happens until some unknown point in time in the future and do nothing until someone else forces the issue. That's essentially what happened here as I understand the evidence and I believe that theas far as the actions that were taken, the procedures, the evidence, the efforts that were made to protect the rights of everyone, including the father, have been sufficiently met so that there's not any denial of procedural due process and that the evidence providing the facts is sufficient to support the findings that the Court made earlier."
The trial court explained further that not only did D.G. fail to support S.M. for 6 months prior to the birth as required under 59-2136(h)(4), but his consent to the adoption could also be deemed unnecessary under 59-2136(h)(1) (termination of parental rights if the "father abandoned or neglected the child after having knowledge of the child's birth"). After the baby was born, D.G. did nothing but visit two times. The trial judge ruled that even if D.G. had a valid due process argument, termination of his parental rights was still appropriate for failure "to make reasonable efforts to support or communicate with the child after having knowledge of the birth, and even after assurances of his status as the biological father, his rights were properly terminated in any event."
D.G. further argues his loss of parental rights for failure to support S.M. 6 months before the child's birth violated due process because the language of K.S.A. 59-2136 uses the singular noun "father." Given the use of the singular form, he asserts the statute must contemplate only one father. D.G. contends that holding him to a strict standard of support denies him due process when the mother questioned whether he was actually the biological father and especially when the statute contemplates a father knowing he is the father.
The language of the statute does not envision that the male involved know he is undoubtedly the biological father. D.G.'s interpretation *789 of the statute would permit both D.G. and D.D. to avoid any supportive obligations for the mother during her pregnancy. As noted by the trial court, such an allowance would negate the legislative intent behind 59-2136 of providing "a measure by which to gauge a father's commitment to his child during pregnancy, a time when a mother's obligations and responsibilities are clear and unavoidable. The statute sets up a balancing obligation of the father to the child and recognizes that those parental responsibilities arise prior to birth."
Statutory construction also defeats D.G.'s singular language argument. Under K.S.A. 1996 Supp. 77-201 Third, words importing a singular number may be extended to several persons.
D.G. next contends that if he had paid support and it was later established that D.D. was the natural father, a hearing pursuant to In re Marriage of Ross, 245 Kan. 591, 783 P.2d 331 (1989), would have been required to allow him to stop paying support.
D.G.'s reliance on Ross is incorrect. In Ross, the court dealt with the paternity question in a very different context than D.G.'s situation. That case involved a "presumed" father who was married to the child's mother when the child was born but who was not the biological father of the subject child. The "presumed father" desired to continue a father-child relationship after he was divorced from the child's mother. The relationship between the man and the child had developed over several years before paternity was determined.
The Ross hearing which D.G. refers to is held for the purpose of determining whether paternity testing is in the best interests of the child, not whether someone should continue to pay support after testing. Ross does not stand for the proposition that a nonbiological father will be forced to pay child support until the child reaches the age of majority in the event a man offered support to the child's mother during her pregnancy and it later turned out that he was not the biological parent.
Even though application of the reasoning in the present case could conceivably require numerous men to assume the responsibility of supporting a single pregnant woman in order to preserve parental rights for one of them, that is preferable to allowing the *790 woman to be deprived of support during her pregnancy. Any man should be aware that he may become the father of a child as a result of having sexual intercourse with a woman, regardless of the number of sexual partners she has. If any of those partners wishes to preserve his parental rights in the event of a later adoption, each one will be required to initiate reasonable efforts toward supporting the mother prior to the child's birth.
The trial court's decision in this case was supported by substantial competent evidence, and this court will not disturb its ruling.
Affirmed.
NOTES
[1] REPORTER'S NOTE: Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish by an order dated February 3, 1998, pursuant to Rule 7.04 (1997 Kan. Ct. R. Annot. 44).