NOT DESIGNATED FOR PUBLICATION

No. 128,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of
Baby Boy S.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed July 3, 2025. Reversed and remanded with directions.

*Zach Chaffee-McClure* and *Madison M. Hatten*, of Shook, Hardy & Bacon LLP, of Kansas City, Missouri, for appellants adoptive parents.

No appearance by appellee natural father.

Before WARNER, C.J., MALONE and PICKERING, JJ.

PER CURIAM: A.M.C. and L.B.C. (Petitioners) appeal the district court's decision denying the termination of B.G.'s (Father) parental rights in the adoption of Baby Boy S. R.S. (Mother) relinquished her parental rights and consented to the adoption. The district court denied the termination of Father's parental rights under K.S.A. 2024 Supp. 59-2136(h)(1)(D), finding that although Father failed to support Mother during the six months before the child's birth, he had reasonable cause to do so "for a portion" of that time. Petitioners' only claim on appeal is that the district court erred in interpreting and applying K.S.A. 2024 Supp. 59-2136(h)(1)(D). We agree with Petitioners and find the district court misapplied the statute. Thus, we reverse and remand with directions for the district court to reconsider its decision applying the proper legal standard.

1

FACTUAL AND PROCEDURAL BACKGROUND

Petitioners' brief "accept[s] the findings and conclusions of the District Court as set forth in its Journal Entry dated August 7, 2024, challenging only the District Court's interpretation of the statute at issue." Thus, we will set forth verbatim most of the district court's findings of fact to lay the factual background for this appeal.

"1. On or about December 17, 2023[,] Baby Boy [S.] was born in Wichita, Sedgwick [C]ounty[,] Kansas.

"2. [R.S.] . . . is the natural mother of Baby Boy [S.]. [R.S.] has filed a consent to allow Baby Boy [S.] to be adopted.

"3. In connection with the adoption proceeding, [R.S.] filed a 'Petition For Termination Of Parental Rights Of Father[.]'

"4. [B.G.] . . . is the natural Father of Baby Boy [S.]. He objects to the termination of his parental rights.

"5. [R.S.] has alleged, as her sole ground for the termination of [B.G.'s] parental rights, that [B.G.] failed without reasonable cause to provide support for the mother during the six months prior to the child's birth.

. . . .

"7. [B.G.] and [R.S.] were in a dating relationship while in high school. While it was described as 'on again, off again' it was clear that it was more than just a casual fling.

"8. In March, approximately March 1, 2023 ([B.G.'s] 18th birthday), [R.S.] told [B.G.] that she was pregnant. It was not long after that conversation that they told [B.G.'s] parents of the pregnancy.

"9. At the time [R.S.] and [B.G.] found out [R.S.] was pregnant [B.G.] and [R.S.] were living at their respective parent's homes while they finished high school.

"10. When [B.G.] was initially informed of the pregnancy he told [R.S.] to get rid of it, which she interpreted to mean terminate the pregnancy.

"11. [B.G.'s] parents and [B.G.] made both general and specific offers of support to [R.S.]. They told [R.S.] that they would support her emotionally and financially with whatever she needed. [B.G.] offered [R.S.] a crib, money and clothes and his family offered to allow [R.S.] to move in with them. [B.G.'s] family offered to help [R.S.] sign

2

up for WIC assistance and to help her get to any doctor's appointments. [R.S.] did not receive any of the financial or material help [B.G.] or his family[] offered.

"12.  [R.S.] testified that she never told [B.G.] or anyone else she would not accept [B.G.'s] support. [R.S.] never refused any actual attempt to deliver support and she would have accepted any assistance. She told [B.G.] that she needed financial help more than once, but none was forthcoming.

"13.  At some point early on [B.G.'s] mother asked [R.S.] to take another pregnancy test which confirmed she was pregnant. [B.G.'s] Mom told [R.S.] that she would have [B.G.] take care of the child.

"14.  [R.S.] said that she was scared to tell her Dad and was not going to tell him right now. She explained that she was concerned that she would be kicked out of her Dad's home before the end of the school year. Both she and [B.G.] were close to graduating at the end of the school year in May.

"15.  There was no evidence presented to show when [R.S.] told her Dad about the pregnancy but there is testimony that would indicate that she eventually told him prior to the child's birth.

"16.  There was no evidence presented to indicate that [B.G.] or his parents were aware that [R.S.] had told her Dad prior to the birth of the child.

"17.  It appears that [B.G.] and [R.S.] stayed together through graduation from high school. [B.G.'s] father indicated that he thought that [B.G.] and [R.S.] were going to raise the child together.

"18.  Sometime in May 2023, [B.G.] and [R.S.] broke up but continued to communicate. [B.G.'s] Mom was communicating to [R.S.] also.

"19.  After the breakup there is some evidence that indicates that there were continued 'general' offers of support made to [R.S.] by [B.G.'s] family.

        . . . .

"21.  [R.S.] began dating [N.J.]. [N.J.] and [B.G.] are not on good terms and [N.J.] did not want [B.G.] talking to [R.S.]. [R.S.] told [B.G.] that [N.J.] did not want him talking to her.

"22.  Text and Facebook messages indicate that [B.G.'s] Mom continued to communicate with [R.S.] up to June 12, 2023[,] at which point the communication stopped. Communication did not start back up until September 2023 when [R.S.] contacted [B.G.] about signing adoption documents.

3

"23. At some point in June 2023 [R.S.] told [B.G.] that she had a miscarriage of the baby she was carrying.

"24. The break in communication between [B.G.'s] family and [R.S.] is consistent with [B.G.], [B.G.'s] Mom and Dad and [B.G.'s] sister's testimony that [R.S.] told [B.G.] that she had a miscarriage and was no longer pregnant.

        . . . .

"26. On [R.S.'s] birthday, August 6, [R.S.] moved out of her Father's house and in with her boyfriend, [N.J.]. She did not tell [B.G.] where she lived and [B.G.] did not know where she moved to. [B.G.] did not ask her where she lived and did not attempt to find her.

"27. In September 2023 [R.S.] contacted [B.G.] to let him know that she was still pregnant. On September 12, 2023, [R.S.] sent a message to [B.G.] letting him know that she didn't want to keep the baby because she was not 'financially stable enough' and that she was considering adoption. [B.G.] responded by telling her 'it's your choice' and 'so it's your choice not mine'. [B.G.] made no offer of financial support to [R.S.] in this text.

"28. In September of 2023 [R.S.] contacted [B.G.] to ask him to sign adoption paperwork. Initially [B.G.] said he was okay with the adoption but later changed his mind and said that he did not want to allow the adoption and that he would take the child.

"29. [B.G.] was not advised by the 'adoption agency' that he would need to provide monetary and non-monetary support to [R.S.] during the pregnancy in order to maintain his parental rights after their child was born.[]

"30. After [B.G.] and his Mother found out that [R.S.] had not miscarried, they again made an offer to help with 'any money she needed', crib, clothes diapers and wipes. None of the help offered was accepted by [R.S.].

"31. [B.G.] worked throughout the time [R.S.] was pregnant and had the means to provide support to [R.S.]. [B.G.] told [R.S.] that he was 'doing fine I got hella money' though he never gave any of that money to [R.S.]. [R.S.'s] stated reason for placing the baby for adoption was that she was 'not anywhere close to financially stable enough.'

"32. On or about October 5th[,] 2023[,] [N.J.] sent [B.G.] a message telling [B.G.] to quit contacting [R.S.]. Around that same time [R.S.] also told [B.G.] to quit messaging her.

"33. After the baby was born [B.G.] found out where [R.S.] lived and he attempted to drop off diapers at her house."

4

On December 17, 2023, Baby Boy S. was born in Wichita. The next day, Mother signed a consent to allow A.M.C. and L.B.C. to adopt Baby Boy S. The day after that, A.M.C. and L.B.C., residents of Johnson County, filed a verified petition in Sedgwick District Court to adopt Baby Boy S. The same day, the district court issued an order placing temporary custody of Baby Boy S. with Petitioners effective "until a hearing and an Order entered on the Petition for Adoption of said minor child."

On January 11, 2024, as part of the adoption proceedings, Mother petitioned to terminate Father's parental rights. The sole ground for termination alleged by Mother was that Father had failed without reasonable cause to provide monetary and non-monetary assistance to her during the last six months of her pregnancy, as provided in K.S.A. 2024 Supp. 59-2136(h)(1)(D). Father answered the petition, acknowledging paternity but denying the asserted ground for terminating his parental rights. Father asserted that "he has tried to provide assistance and support to mother through her pregnancy" but that "mother has purposely shut father out of being a part of his child's life."

The district court held an evidentiary hearing on the termination petition on June 16, 2024. Petitioners, Mother, and Father appeared at the hearing with counsel. A transcript of that hearing is not included in the record on appeal.

On August 7, 2024, the district court issued a 16-page order denying Mother's petition to terminate Father's parental rights. After reciting its findings of fact, which are not challenged on appeal, the district court discussed caselaw and statutory authority for terminating parental rights under K.S.A. 2024 Supp. 59-2136(h)(1)(D). In addressing whether Father failed without reasonable cause to support Mother during the six months before the child's birth, the district court found that "[B.G.'s] parents['] offers of help may not . . . be credited to [B.G.], nor are they sufficient to satisfy that responsibility for [B.G.]." The district court also found that "[t]he support that was offered was not 'significant and sustained over the applicable period' and were 'incidental contributions.'"

The district court specifically found that "[B.G.] also has no excuse for failing to provide support to [R.S.] after September 12, 2023, until the birth of the child in December."

In its conclusions of law, the district court decreed that "[B.G.] failed to provide 'significant' support to [R.S.] during the six months prior to the child's birth." The district court also decreed that "[R.S.'s] statement to [B.G.] that she had miscarried provided 'reasonable cause' to [B.G.] to not provide support to [R.S.] for the period between June and September." Finally, the district court decreed that the petition to terminate parental rights was denied "because [B.G.] had 'reasonable cause' to believe that he was not required to support [R.S.] for a portion of the six months prior to the birth of the child."

Petitioners timely appealed the district court's order denying termination of Father's parental rights. The record on appeal does not include any orders issued by the district court in the adoption proceedings after the August 7, 2024 journal entry. The record does not reflect whether Baby Boy S. remains in the physical custody of Petitioners or whether any visitation orders have been issued pending this appeal. After the appeal was filed, Father's attorney moved to withdraw which this court granted. Father did not obtain substitute counsel and no brief was filed on Father's behalf.

ANALYSIS

Petitioners claim the district court erred in denying the petition to terminate Father's parental rights because it misapplied K.S.A. 2024 Supp. 59-2136(h)(1)(D). Petitioners ask: "[M]ay a court terminate [parental rights] if there is no support during the entire six-month period, but the non-support is excused for a portion of that time?" They assert the district court "felt bound to deny termination, concluding that the temporary excuse was dispositive under K.S.A. 59-2136(h)(1)(D)." Petitioners argue that "[t]he District Court was wrong—it had authority to terminate notwithstanding a temporary excuse, and this Court should clarify the statute and remand."

6

"Natural parents who have assumed parental responsibilities have a fundamental right to raise their children that is protected by the United States Constitution and the Kansas Constitution." *In re Adoption of C.L.*, 308 Kan. 1268, 1279, 427 P.3d 951 (2018). Accordingly, adoption statutes are "strictly construed in favor of maintaining the natural parents' rights when it is claimed consent to adoption is not required by reason of a parent's failure to fulfill statutory parental obligations." 308 Kan. at 1279. That said, these constitutional protections extend only "to the extent that the parent demonstrates a commitment to his or her parental responsibilities." *In re Adoption of G.L.V.*, 286 Kan. 1034, 1059, 190 P.3d 245 (2008).

K.S.A. 2024 Supp. 59-2136(h)(1)(A)-(G) provides that a district court can terminate a father's parental rights upon finding by clear and convincing evidence the existence of any one of seven grounds listed in the statute. The only ground at issue here allows termination of parental rights when "the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth." K.S.A. 2024 Supp. 59-2136(h)(1)(D). This subsection therefore provides "'a measure by which to gauge a father's commitment to his child during pregnancy, a time when a mother's obligations and responsibilities are clear and unavoidable. The statute sets up a balancing obligation of the father to the child and recognizes that those parental responsibilities arise prior to birth.'" *In re Adoption of D.M.M.*, 24 Kan. App. 2d 783, 789, 955 P.2d 618 (1997). Support is "monetary or non-monetary assistance that is reflected in specific and significant acts and sustained over the applicable period." K.S.A. 2024 Supp. 59-2136(h)(4); *In re Adoption of C.S.*, 57 Kan. App. 2d 352, 358, 452 P.3d 858 (2019) ("[A] father need not provide total support to the pregnant mother in order to meet his obligations under Kansas law, but the support must have been of some consequence and reasonable under all the circumstances.").

On appeal, Petitioners frame their argument as a purely statutory question. They claim the district court erred in interpreting and applying the sole statutory ground

alleged to terminate Father's parental rights, K.S.A. 2024 Supp. 59-2136(h)(1)(D). They contend the district court erroneously believed it could not terminate Father's parental rights because Mother had misled Father for three months about having a miscarriage, and as a result, Father had reasonable cause to believe he did not need to support Mother for a portion of the six months before the child's birth. Resolution of this issue requires statutory interpretation, a question of law over which this court exercises unlimited review. See *In re Adoption of B.B.M.*, 290 Kan. 236, 240, 224 P.3d 1168 (2010).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). When there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Chalmers v. Burrough*, 314 Kan. 1, 8, 494 P.3d 128 (2021).

The district court unequivocally found that Father failed to provide support for Mother during the six months before Baby Boy S.'s birth. The district court noted that even after Father was informed that Mother had not miscarried, he made no reasonable effort to locate her or offer support. The district court found that Father had "no excuse for failing to provide support to [Mother] after September 12, 2023, until the birth of the child in December." Still, the district court denied the petition to terminate Father's parental rights because Father had reasonable cause to believe that he did not need to support Mother "for a portion" of the six months before the birth of the child.

Petitioners cite *In re Adoption of B.L.M.*, No. 104,134, 2010 WL 5185826 (Kan. App. 2010) (unpublished opinion), to support their claim on appeal, acknowledging they

8

failed to bring this decision to the district court's attention. We agree with Petitioners that *Adoption of B.L.M.* is factually and legally on point. In that case, the natural mother did not notify the father of her pregnancy until two-and-a-half months before the birth of the child. The district court found that because the father did not have the opportunity to support the mother "during the entire 6 months" before the child's birth, his rights could not be terminated under K.S.A. 2009 Supp. 59-2136(h)(1)(D). 2010 WL 5185826, at *3. The district court concluded it was "mathematically" impossible to terminate the father's parental rights under this ground. 2010 WL 5185826, at *3. In other words, the district court found the subsection was inapplicable because the father was unaware of the pregnancy for a portion of the six months before birth. 2010 WL 5185826, at *3-4.

On appeal, this court found the district court committed reversible error in interpreting and applying the subsection, explaining "it appears the district court precluded the petitioners' claim under K.S.A. 2009 Supp. 59-2136(h)(1)(D) as a matter of law simply because [Father] did not have an opportunity to support [Mother] during the entire 6 months prior to [the child's] birth." 2010 WL 5185826, at *4. This court explained that the district court should have at least considered evidence of father's failure to provide support once he learned about the pregnancy, and its failure to do so rested on an improper construction of subsection (h)(1)(D). That said, the panel noted:

> "Of course, it remains within the district court's sound judgment to weigh the evidence and determine whether the petitioners have met their burden of proof that [Father's] parental rights should be terminated under K.S.A. 2009 Supp. 59-2136(h)(1)(D). But the district court must at least consider the evidence and not reject the petitioners' claim as a matter of law simply because [Father] did not know about the pregnancy for the entire last 6 months of the pregnancy." 2010 WL 5185826, at *4.

Petitioners contend the district court here made the same error the district court made in *Adoption of B.L.M.* by ruling it could not terminate Father's parental rights under subsection (h)(1)(D) because Father had reasonable cause to believe he did not need to

9

support Mother for a portion of the six-month period before Baby Boy S. was born. They assert the district court did not weigh the evidence of Father's failure to support Mother for the last three months of her pregnancy based on its interpretation of subsection (h)(1)(D) that such evidence could not support termination of parental rights. Petitioners' claim is supported by the record and an analysis of the district court's ruling.

Baby Boy S. was born on December 17, 2023, so the six-month statutory window began on June 17, 2023. Mother misled Father about having a miscarriage from June to September 12, 2023, and the district court properly found this deception provided reasonable cause for Father to not support Mother during this period of time. But the district court also found that Father failed to provide any significant support to Mother from September 12, 2023, to December 17, 2023, and he had no excuse not to do so. Still, the district court denied the petition to terminate Father's parental rights and the only reason it gave was because Father had reasonable cause to believe he did not need to support Mother *for a portion* of the six months before the child's birth.

We read the district court's ruling as finding as a matter of law that subsection (h)(1)(D) did not apply because Father did not have a chance to support Mother during the entire six-month period before the child's birth. It appears the district court did not consider and weigh the evidence of Father's failure without reasonable cause to support Mother during the final three months of her pregnancy as providing grounds to terminate Father's parental rights. This is the same mistake the district court made in construing subsection (h)(1)(D) in *Adoption of B.L.M.* A district court may terminate parental rights under subsection (h)(1)(D) even if the father has reasonable cause for not supporting the mother for some of the relevant six-month period. The district court must consider the evidence presented for the entire six months before the child's birth.

We understand the difficult facts this case presented to the district court. Terminating a father's parental rights for failing to support the mother without reasonable

cause during the last six months of her pregnancy under K.S.A. 2024 Supp. 59-2136(h)(1)(D) is a serious proposition even when the father has the full six-month window to provide support. But when the father has knowledge of the pregnancy for less than the full six-month statutory period, it becomes even more difficult to apply this subsection as an appropriate test to terminate a father's parental rights. This court previously has recognized this difficulty in applying subsection (h)(1)(D):

> "Certain arbitrary time frames need to be drawn by the legislature in order to test parental unfitness. Normally, 6 months is a sufficient amount of time for a father to act responsibly and provide support for the mother prior to the child's birth. . . . Each case must be judged on its own facts. But as the date the father gains knowledge of the pregnancy gets closer and closer to the child's birth, the sufficiency of the evidence to terminate his parental rights on this ground becomes less and less convincing." *In re Baby Girl B.*, 46 Kan. App. 2d 96, 110-11, 261 P.3d 558 (2011) (Malone, J., concurring).

Here, Father had slightly more than three months before the child's birth to provide support for Mother, making it difficult to apply subsection (h)(1)(D) as an appropriate test to determine whether Father's parental rights should be terminated. But this fact does not mean it was legally impossible for the district court to consider this subsection as a ground for terminating Father's parental rights. In fact, if a father can invalidate the application of K.S.A. 59-2136(h)(1)(D) because he was unaware of a mother's pregnancy—for any reason, including situations where the mother is unaware of his whereabouts or may not know she is pregnant—for any portion of the last six months of that pregnancy, he would circumvent his support obligation for any period of that time he *is* aware of the pregnancy.

K.S.A. 2024 Supp. 59-2136(h)(1)(D) allows the district court to terminate a father's parental right upon finding by clear and convincing evidence that the father "failed without reasonable cause to provide support for the mother *during* the six months prior to the child's birth." (Emphasis added.) The word "during" signals that the district

11

court must consider the evidence presented for the entire six months before the child's birth. Our careful review of the record and analysis of the district court's ruling leads us to conclude that the district court misapplied the statute and failed to consider all the evidence presented in deciding whether Father's parental rights should be terminated under K.S.A. 2024 Supp. 59-2136(h)(1)(D).

CONCLUSION AND REMAND ORDER

We conclude the district court committed reversible error in interpreting and applying K.S.A. 2024 Supp. 59-2136(h)(1)(D), and we remand for the district court to reconsider its decision applying the proper legal standard. On remand, the district court should consider the evidence presented that Father failed without reasonable cause to support Mother from September 12, 2023, to Baby Boy S.'s birth on December 17, 2023, and decide whether that evidence is sufficient to terminate Father's parental rights. It remains within the district court's sound judgment to weigh the evidence and determine whether Father's parental rights should be terminated under subsection (h)(1)(D). The district court must make its decision based on the evidence already presented but may allow the parties additional argument on the evidence and the law.

The stakes in any contested adoption proceedings are profound for all the parties involved, and it is imperative that the district court apply the correct legal framework. We emphasize the importance of resolving the remaining issues without unnecessary delay and urge the district court to conduct all further proceedings as expeditiously as possible. Finally, if Father desires but is financially unable to employ an attorney, the district court shall appoint an attorney to represent Father under K.S.A. 2024 Supp. 59-2136(h)(1).

Reversed and remanded with directions.