NOT DESIGNATED FOR PUBLICATION

No. 128,193

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of D.A., D.A., and Y.A.,
Minor Children.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed April 4, 2025. Affirmed.

*Clay A. Kuhns*, of Meade, for appellant natural father.

*David H. Snapp*, of David H. Snapp, L.C., of Dodge City, for appellee.

Before ISHERWOOD, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Father appeals the district court's decision that termination of his parental rights and Stepfather's adoption of the children was warranted because Father neither had contact with nor provided any support for his children during the two years preceding the adoption petition. Father argues that his lack of involvement with the children was due to his belief that he was prohibited from having contact with them under the terms of a temporary ex parte order. Following a careful review of the record and analysis of the relevant caselaw, we conclude that Father's misconstruction of the district court's order does not excuse his failure to exercise his parental rights or honor his obligations to the children. Accordingly, the district court's termination of Father's parental rights and granting of Stepfather's adoption petition is affirmed.

1

Father and Mother married in 2013 and welcomed three children—D.A., D.A., and Y.A.—before divorcing in 2019. The couple agreed to joint legal custody, with Mother's home as the children's primary residence, and "liberal parenting time" for Father.

In July 2020, Mother sought an ex parte order to modify custody and parenting time based on her belief that Father was involved with drugs. She informed the district court that Father was in jail awaiting trial on four counts of aggravated child endangerment, possession of methamphetamine with intent to distribute, two counts of aggravated assault with a deadly weapon, theft of a firearm, distribution of methamphetamine, possession of drug paraphernalia, criminal use of a weapon, driving while suspended, criminal possession of a firearm, aggravated burglary, circumvention of an interlock device, and transporting an open container. Mother also alleged that Father left the minor children unattended without proper food, drink, or supervision.

The district court entered temporary ex parte orders to grant Mother temporary sole custody but suspended Father's parenting time and contact with the minor children. It set a review hearing for July 31, 2020, and the sheriff served notice on Father in jail on July 29, 2020. Father failed to appear for the hearing and so the district court simply found that Father received notice but failed to appear. It continued the ex parte orders and served Father with a copy of the same.

Roughly two years later, the children's Stepfather filed a petition for adoption. Father formally entered an objection, so the matter proceeded to trial. Father's counsel informed the court that Father missed the review hearing in 2020 because he was in custody and the Sheriff's Office refused to bring him to court.

Father testified on his own behalf and explained it was his experience that inmates were automatically transported for their court dates without the need for affirmative steps to ensure they were permitted to attend. For example, he was never required to submit a transportation request for court dates in his criminal case. But on the day of the custody hearing, jail staff refused to transport Father because he was not on the docket. Father testified that when he received the district court's journal entry from that hearing he believed that his parental rights were terminated. He asserted that upon his release from jail Mother told him that he did not have any rights to the children, so he simply accepted that fact and never consulted an attorney about the court's ex parte orders or otherwise sought clarification as to their effect. Father explained that it was not until he received Stepfather's adoption petition two years later that he realized he may still possess some parental rights.

Mother and Stepfather offered similar testimonies in that both agreed that Father attempted no contact with the children and provided no support of any kind for them for more than two years preceding the adoption petition. Mother also acknowledged that Father did not owe any court-ordered child support.

The district court applied the presumption that Father failed to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition, terminated his parental rights, and granted Stepfather's petition for adoption. Father appealed, and following an analysis of the district court's findings of fact and conclusions of law, a panel of this court reversed the decision of the district court. *In re Adoption of D.A., D.A., and Y.A.*, No. 126,802, 2024 WL 389772 (Kan. App. 2024) (unpublished opinion). The panel found that because no child support order was ever formally entered, the rebuttable presumption under K.S.A. 2022 Supp. 59-2136(h)(3) for nonsupport did not apply. 2024 WL 389772, at *5.

On remand, it remained Stepfather's burden under K.S.A. 2022 Supp. 59-2136(h)(1)(G) to show by clear and convincing evidence that Father failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of his petition. 2024 WL 389772, at *5. The district court reviewed the record and independently determined that Father neglected to honor his parental responsibilities during the time in question. It noted the ex parte order specifically used the word "temporary" to describe the modified custody arrangement and also highlighted the fact that Father understood how to secure the services of an attorney when he desired to do so as evidenced by the fact he successfully retained counsel to assist with his criminal cases. The district court once again concluded that termination of Father's rights and adoption by Stepfather was appropriate.

Father now brings his case before this court for a determination of whether the district court erred in terminating his parental rights and failing to give greater consideration to Father's claim that a mistake of law prompted his misconception that he was prohibited from contacting and providing for his children.

LEGAL ANALYSIS

*Did the district court err in terminating Father's parental rights?*

It is Father's position that the failure to assume parental obligations necessarily contemplates an awareness that such duties exist. Thus, where his misinterpretation of the district court's ex parte order gave rise to the belief that he did not have any rights to his children, it cannot be said that he knowingly refused to honor his responsibility to provide for them. Stepfather counters that the district court's fact-findings do not support Father's argument, that Father's misconception did not constitute a mistake of law, and to the extent such a mistake could be said to exist, it still would not excuse his failure to contact and support the children.

A district court's finding under K.S.A. 2023 Supp. 59-2136(h) that a parent has refused or failed to assume parental duties for two years prior to the filing of the petition for stepparent adoption is a finding of fact that will be reviewed on appeal to determine whether it is supported by substantial competent evidence. See *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011).

When a district court terminates parental rights based on factual findings made under K.S.A. 2023 Supp. 59-2136(h)(1), those factual findings will be reviewed on appeal to determine if, after viewing all of the evidence in the light most favorable to the prevailing party, the findings were supported by clear and convincing evidence. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

Adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents where the statute is being used to terminate the right of a natural parent without consent. *In re Adoption of C.L.*, 308 Kan. 1268, 1279-80, 427 P.3d 951 (2018). The party seeking to terminate a parent's rights has the burden of proving by clear and convincing evidence that termination is appropriate under K.S.A. 2023 Supp. 59-2136. 308 Kan. at 1278.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides substantive protection for parents when they honor their obligation to care and provide for their children. But when parents decline to accept a degree of responsibility for their child's future, their mere biological relationship with the child does not afford the parent the same measure of constitutional protection. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 (2008).

Father maintains that he cannot fail to exercise rights that he is unaware he even possesses and offers an analysis of the text of K.S.A. 2023 Supp. 59-2136(h)(1), as support for his assertion that clear and convincing evidence of knowledge must be

established. While certain portions of the provision do contain a knowledge component it is not the type of knowledge that Father argues must exist.

K.S.A. 2023 Supp. 59-2136(h)(1) provides:

"When a father or alleged father appears and claims parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act, K.S.A. 23-2201 et seq., and amendments thereto. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated and find the consent or relinquishment unnecessary, upon a finding by clear and convincing evidence, of any of the following:

(A) The father abandoned or neglected the child *after having knowledge* of the child's birth;

(B) the father is unfit as a parent or incapable of giving consent;

(C) the father has made no reasonable efforts to support or communicate with the child *after having knowledge* of the child's birth;

(D) the father, *after having knowledge* of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;

(E) the father abandoned the mother *after having knowledge* of the pregnancy;

(F) the birth of the child was the result of rape of the mother; or

(G) the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." (Emphases added.)

The plain language of the statute indicates that a father cannot be expected to support a pregnancy or child which he lacks any awareness of. But Father has never claimed ignorance of Mother's pregnancy or the birth of his three children. Accordingly, we find that Father's argument stretches the plain meaning of K.S.A. 2023 Supp. 59-2136(h)(1) beyond what was contemplated by the Legislature in drafting its terms.

Father also favors us with no legal authority to buttress his interpretation of K.S.A. 2023 Supp. 59-2136(h)(1) and concedes a lack of success in locating other cases where parental rights were terminated as a result of a parent's alleged mistake of law. While he repeatedly directs our attention to *In re Adoption of G.L.V.*, 286 Kan. 1034, that case involved the effect of a legislative amendment to K.S.A. 59-2136(d) which allowed courts to consider the best interests of the child and the fitness of the nonconsenting parent when determining whether a stepparent adoption should be granted. 286 Kan. at 1042-43. A parent's knowledge of the legal status of their parental rights was not at issue or touched upon in that case. Accordingly, it is not helpful in resolving the issue that Father has asked us to analyze.

There are additional fatal flaws in Father's argument. First, we are not persuaded that Father's situation is even properly characterized as a mistake of law. A mistake of law generally arises when an individual is ignorant of a statute, a court rule, or the existence of a legal remedy. See *State v. Davisson*, 303 Kan. 1062, 1069-70, 370 P.3d 423 (2016). Here, Father argues only that he did not know he had the option to contact or provide for his children because he overlooked the word "temporary" as it appeared in the district court's written order. The district court made extended explicit findings that the temporary ex parte order was plainly written and would not have led Father to misunderstand Kansas law.

Even if we were to accept Father's claim that his case truly involves a mistake of law, he offers no compelling argument demonstrating why he is not bound by the longstanding legal principle that he is presumed to be aware of the law related to this matter. See *State v. Ellington*, 314 Kan. 260, 262, 496 P.3d 536 (2021) (ignorance of the law cannot establish excusable neglect). Father never presented any evidence that he assumed the duties of a parent during the requisite time frame. He rests his claim on his lack of knowledge that he could exercise parental rights. Thus, Father has failed to

establish that the district court should have excused his failure to honor his parental obligations.

Finally, there is no indication from the record that Father's misinterpretation of the order provided the foundation for the district court's ruling. Rather, following a comprehensive review of the evidence, the district court concluded that over the course of two consecutive years, Father opted to not set any money aside for his children, sought no contact with them, and made no overture to petition the district court to afford him the opportunity to exercise any of his parental rights. Thus, termination of his parental rights and Stepfather's request for adoption was appropriate.

Our review of the record reveals that the district court's findings are supported by substantial competent evidence. Neither caselaw nor the plain language of the statute offers an excuse for Father's inaction, and his purported misunderstanding of the district court's temporary ex parte order likewise does not undermine the district court's conclusion. Accordingly, we are satisfied the district court's termination of Father's parental rights and granting of Stepfather's adoption request is legally sound.

Affirmed.